IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMINA DIAB, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRITISH AIRWAYS, PLC, | : | No. 20-3744 |
|     Defendant. | : | |

**Schiller, J.**                                                                November 23, 2020

    If you have flown, you likely know that while seated on an airplane, it is best to keep your seatbelt fastened in case of turbulence. Unfortunately for Amina Diab, she was injured on a British Airways flight from New York to London when some unexpected turbulence occurred. She sued British Airways, claiming that the airline must compensate her for her injuries. But the merits of her claims are not the focus here. Rather, the Court must first approach whether Diab's claims can take off in this Court. British Airways has filed a motion arguing that this Court lacks personal jurisdiction over it. Because British Airways has consented to personal jurisdiction in Pennsylvania, the motion is denied.

**I.     FACTUAL BACKGROUND**

    British Airways is registered as a foreign corporation in Pennsylvania. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction [Pl.'s Opp'n] at 4; *see also* Def.'s Proposed Reply Mem. of Law in Further Supp. of Its Mot. to Dismiss Pursuant to FRCP 12(b)(2) at 2-3.)

    Diab was a passenger on British Airways flight BA114 from New York to London on August 5, 2018. The flight had reached cruising altitude when it encountered severe and extreme turbulence that caused significant injury to Diab. Specifically, after the seat belt sign was turned off, Diab "walked down the aisle and entered the lavatory, when, without warning, she was

violently thrown about the lavatory causing her to rotate forcefully about her right knee causing Ms. Diab to suffer immediate pain to her right knee." (Compl. ¶ 21.) She was provided ice and pain medication on the flight, and she sought emergency treatment on August 6, 2018, at a hospital in France. (*Id*. ¶ 24.) Due to extensive swelling, she was unable to get additional treatment on the knee at that time. (*Id*. ¶ 25.) When she went to another hospital in France on August 9, 2018, she was diagnosed with a severe knee sprain and probable ACL rupture. (*Id*. ¶ 27.) When she returned to the United States, Diab was eventually diagnosed with a lateral patellar dislocation and a knee sprain. (*Id*. ¶ 30.)

She brings her claims under the Montreal Convention, a treaty governing liability during international air travel, alleging that she suffered an injury resulting from an accident during an international flight.

## II. STANDARD OF REVIEW

The plaintiff bears the burden of establishing jurisdiction over the moving defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). If no evidentiary hearing on the motion is conducted, the plaintiff need make only a prima facie case of personal jurisdiction, and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor on a motion to dismiss. *Id*. However, the scope of review for a motion to dismiss for lack of personal jurisdiction is not limited to the face of the pleadings. *Patterson by Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990).

## III. DISCUSSION

British Airways argues that this Court lacks personal jurisdiction over it. According to British Airways, this Court lacks general personal jurisdiction over it because British Airways is

not "at home" in Pennsylvania, as required by Supreme Court precedent. (Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss Pursuant to FRCP 12(b)(2) [Def.'s Mem.] at 3.)

But this is not the main thrust of Plaintiff's jurisdictional argument. Regardless of where British Airways calls home, if it agreed to be sued in Pennsylvania, this Court has personal jurisdiction over it. British Airways did agree, so this Court has personal jurisdiction.

### A. The Montreal Convention

Plaintiff brings her claims pursuant to the Montreal Convention, which allows for individuals injured during international air travel to recover for their injuries. The Montreal Convention "governs international carrier liability for flights between the United States and foreign states that are parties to the Convention." *DeJoseph v. Cont'l Airlines, Inc.*, 18 F. Supp. 3d 595, 600 (D. N.J. 2014). Article 29 of the Montreal Convention states that "[i]n the carriage of passengers, baggage and cargo, any actions for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention. . . ." Convention for the Unification of Certain Rules for Int'l Carriage by Air ("Montreal Convention") art. 29, May 28, 1999 (entered into force on Nov. 4, 2003), S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *16-17. The Montreal Convention "is the sole means for recovery of personal injuries sustained during international air travel." *Hidalgo-Lobato v. Am. Airlines, Inc.*, Civ. A. No. 10-3122, 2014 WL 2510545, at *1 (D. N.J. June 4, 2014).

The Montreal Convention includes a jurisdictional provision. That jurisdictional provision states that:

1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of

> business through which the contract has been made or before the court at the place of destination.
>
> 2. In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

Montreal Convention, art. 33. Article 33 also directs that "[q]uestions of procedure shall be governed by the law of the court seized of the case." Montreal Convention art. 33(5).

British Airways predicted that Diab would contend that the Montreal Convention confers personal jurisdiction over British Airways here in Pennsylvania. (Def.'s Mem. at 4-5.) British Airways's prediction was correct; Diab does raise the possibility that the Montreal Convention confers personal jurisdiction upon this Court. (Pl.'s Opp'n at 5-6.) British Airways asks the Court to reject Diab's argument because the Montreal Convention's jurisdictional provision refers to subject matter, not personal, jurisdiction. (*Id*. ("Thus, whether this Court has treaty jurisdiction over this action under Article 33 of the Montreal Convention has no bearing on whether this Court also has personal jurisdiction over British Airways.").)

Courts have consistently concluded that the jurisdictional article of the Montreal Convention addresses subject matter jurisdiction, not personal jurisdiction. *See, e.g.*, *Davydov v. Scandinavian Airlines Sys.*, Civ. A. No. 19-17628, slip op. at 2-3 (D. N.J. Oct. 5, 2020); *Bandurin v. Aeroflot Russian Airlines*, Civ. A. No. 19-255, 2020 WL 362781, at *5 (N.D. Ill. Jan. 22, 2020) ("[Article 33] confers subject-matter jurisdiction; it does not confer personal jurisdiction."); *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, Civ. A. No. 16-9791, 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018); *Tucker v. British Airways PLC*, Civ. A. No. 16-618, 2017 WL

6389302, at *3 (W.D. Wash. Dec. 14, 2017). The question of personal jurisdiction is then determined by the law of the country in which the case is brought. Plaintiff has offered the Court no reason to depart from British Airways's reading of the Montreal Convention. So here, the Treaty allows Diab to sue British Airways in the United States, but it does not authorize her to bring her lawsuit in any particular court in the United States. She must demonstrate that the court where she filed her lawsuit has personal jurisdiction over British Airways.

Following the logic of courts that have determined that the Montreal Convention addresses subject matter jurisdiction, not personal jurisdiction, Diab may seek redress for her injuries in the United States, but not necessarily in Pennsylvania. Then where? Plaintiff does not spend a great deal of time addressing this question, simply contending that it is "unimaginable to think" that the drafters of the Montreal Convention would confer subject matter jurisdiction on courts in the United States but then leave plaintiffs twisting in the wind because there might not be a court in the United States with personal jurisdiction over a particular foreign airline. (Pl.'s Opp'n at 6.)

This is a fascinating question, but the Court will leave it in the air for the time being. Ultimately, the Court has general personal jurisdiction over British Airways for another reason.

### B.   General Considerations of Personal Jurisdiction

Having placed the Montreal Convention on standby, the Court turns to the issue of personal jurisdiction in Pennsylvania.

A district court may assert personal jurisdiction over a nonresident to the extent allowed under the law of the state in which the district court sits. Fed R. Civ. P. 4(e). A court must then be satisfied that personal jurisdiction is appropriate under the Due Process Clause of the Fourteenth Amendment. *See Imo Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Under Pennsylvania law, 42 Pa. Cons. Stat. § 5322, this inquiry collapses into one step

because Pennsylvania's long-arm statute authorizes courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

Under the Due Process Clause of the Fourteenth Amendment, courts may exercise personal jurisdiction over out-of-state defendants only in cases where the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). The minimum contacts requirement may be met through either of two theories of personal jurisdiction: specific or general. *See, e.g. BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). For reasons that will follow, this case focuses on general jurisdiction. General jurisdiction "exists when a defendant has maintained systemic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Courts possess general personal jurisdiction over out-of-state companies only if the companies' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the state." *Goodyear*, 564 U.S. at 919. Clearly, a company is "at home" in its place of incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). If, however, a company lacks both of these primary connections with a forum state, there must be "exceptional" circumstances present for the company to be considered "at home" in the state. *Id.* at 139 n.19. But a full analysis of where British Airways is at home in the United States is unnecessary here. There is a simpler route to travel to find that this Court has personal jurisdiction over British Airways.

### C. Consent to Personal Jurisdiction in Pennsylvania

British Airways has registered to do business in Pennsylvania. Under Pennsylvania law, it has therefore consented to be sued in Pennsylvania.

Pennsylvania law requires foreign corporations to register in Pennsylvania if they wish to do business in the Commonwealth. *See* 15 Pa. Cons. Stat. § 411(a). A consequence of that registration is that the foreign corporation consents to the exercise of "general personal jurisdiction" in the "tribunals of this Commonwealth." 42 Pa. Cons. Stat. § 5301(a)(2)(i). British Airways is registered in Pennsylvania under this law, and it therefore has consented to personal jurisdiction here.

Undoubtedly, a party may consent to be sued in a particular jurisdiction. *See Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991). Thomas Bane sued his employer in federal court in Pennsylvania and alleged that his employer, Netlink, Inc. fired him because of his age. Netlink argued that the court lacked personal jurisdiction over it because its place of incorporation and its principal place of business were outside of Pennsylvania. Moreover, Netlink had no offices in Pennsylvania, no employees in Pennsylvania, paid no taxes in Pennsylvania, and owned no property in Pennsylvania. Netlink was however authorized to conduct business in Pennsylvania. The Third Circuit concluded that Netlink's decision to register to do business in Pennsylvania meant that the company had purposefully availed itself of the privilege of conducting activities in Pennsylvania. *Bane*, 925 F.2d at 640. Additionally, "Netlink's application for a certificate of authority can be viewed as consent to be sued in Pennsylvania under [state law], which explicitly lists consent as a basis for assertion of jurisdiction over corporations. Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional." *Id.* at 641.

Recently, the ruling in *Bane* has been questioned in light of *Daimler*. The question is thus whether Pennsylvania's statutory scheme, whereby the price of doing business in Pennsylvania is consenting to personal jurisdiction in Pennsylvania, comports with due process in light of *Daimler's* requirement that a foreign corporation must be "at home" in a particular jurisdiction for general personal jurisdiction to attach.

Numerous courts have addressed this issue. In a thorough opinion, one court in this District concluded that Pennsylvania's statutory scheme is unconstitutional given the ruling in *Daimler*. *Sullivan v. A.W. Chesterton, Inc.*, 384 F. Supp. 3d 532 (E.D. Pa. 2019). According to this decision, Pennsylvania's statutory scheme presented corporations with a "Hobson's choice: consent to general personal jurisdiction or be denied the benefits of doing business in Pennsylvania." *Id*. at 541. The court deemed this Hobson's choice essentially an unconstitutional condition because Pennsylvania requires foreign corporation to surrender a constitutional right as a condition to a benefit generally available to others in the Commonwealth. *Id*. at 541-42. Because the ability to engage in interstate commerce is of "fundamental importance", the *Sullivan* court reasoned, Pennsylvania's statutory scheme extracted an involuntary consent to personal jurisdiction. *Id*. at 542. This did not end the inquiry for the court in *Sullivan*, however. Because the Third Circuit had approved of Pennsylvania's statutory framework prior to *Daimler*, the court had to determine whether the Third Circuit's decision in *Bane* survived *Daimler*. The *Sullivan* court decided that "*Daimler* changed the standard for determining when a state may exercise general personal jurisdiction over a foreign corporation." *Id*. at 545. The *Sullivan* court consequently deemed itself

bound to apply *Daimler*'s new constitutional standard, "not withstanding [*sic*] previous circuit law."[1] *Id*.

But *Sullivan* is not the final destination on this journey. A number of courts have not applied the conclusion of *Sullivan*. Those courts have determined that *Bane's* existence answers the constitutional question and *Daimler* hardly killed the Third Circuit's ruling in *Bane*. This Court will join the numerous courts that continue to follow *Bane* despite the decision in *Daimler*. *Daimler* did not make any grand pronouncements on the status of due process as it relates to consent to personal jurisdiction. *Daimler* did not christen a new rule on the constitutionality of consent and personal jurisdiction. Rather, *Daimler* presented the limited question of "whether a foreign corporation may be subjected to a court's general jurisdiction based on the contacts of its in-state subsidiary." *See Smith v. NMC Wollard, Inc.*, Civ. A. No. 19-5101, 2020 WL 1975074, at *4 (E.D. Pa. Apr. 24, 2020); *see also Winters v. Akzo Nobel Surface Chemistry, LLC*, Civ. A. No. 19-5398, 2020 WL 2474428, at *4 (E.D. Pa. May 13, 2020) ("Second, we find that the Supreme Court's holding in *Daimler* does not establish a new constitutional standard that is relevant to the narrow issue in this case.") *Daimler* did not address the constitutionality of Pennsylvania's statutory scheme. *Bane*, however, did.

*Bane*, which directly addressed the concept of consent to personal jurisdiction under Pennsylvania law, remains good law in this Circuit. *See Kraus v. Alcatel-Lucent*, 441 F. Supp. 3d 68, 75 (E.D. Pa. 2020) ("Because *Daimler* did not address whether registration to do business is a sufficient basis for general personal jurisdiction, and neither the Supreme Court nor the Third Circuit have addressed consent-based jurisdiction since *Daimler*, we will apply Third Circuit

---

[1] Another court in this District has agreed with and adopted the reasoning and conclusion of *Sullivan*, but that court did not add any analysis to the issue. *Reynolds v. Turning Point Holding Co.*, Civ. A. No. 19-1935, 2020 WL 953279 (E.D. Pa. Feb. 26, 2020).

precedent."); *see also Winters*, 2020 WL 2474428, at *4 ("*Bane* remains valid and controlling within this Circuit.").

The court in *Sullivan* may have been reading the skywriting on the wall, but this Court will not decide that issue in favor of British Airways when the Third Circuit has decided that this Pennsylvania law is constitutionally sounds and requires finding personal jurisdiction. The Third Circuit has spoken; the Supreme Court has addressed another issue that may—or may not—be extrapolated to overturn Pennsylvania's personal jurisdiction statutory scheme. *See Replica Auto Body Panels & Auto Sales, Inc. v. inTech Trailers, Inc.*, 454 F. Supp. 3d 458, 464 (M.D. Pa. 2020). But, unless or until that happens, this Court is compelled to follow Third Circuit precedent. *Id*. ("While *Daimler* provides strong reasons to believe that general jurisdiction by consent may be abrogated in the future, it neither addresses this question nor directly compels this outcome logically. Quite simply, *Daimler* did not explicitly abrogate consent as a basis for personal jurisdiction and this Court will not find Pennsylvania's statutory framework violates due process when the Third Circuit Court of Appeals has concluded the opposite. Thus, this Court is compelled to follow *Bane* given the current state of the law.").

Finally, the Court questions whether Pennsylvania's law presents a draconian blow to the business options of companies seeking to do business in Pennsylvania. There is nothing hidden about Pennsylvania's law, and the mere fact that a company might need to face lawsuits in Pennsylvania as a price for doing business in the Commonwealth presents no great threat to companies. The Pennsylvania legislature could have concluded that the need to protect individuals and businesses by providing them with a forum to seek redress for possible legal grievances was worth the possible loss of business that might befall the Commonwealth. Moreover, this provision is similar to and consistent with Pennsylvania law's treatment of general personal jurisdiction over

individuals, in which an individual is subject to such jurisdiction merely by being present in the Commonwealth when served with process. A corporation registering to do business in Pennsylvania has indicated its presence in Pennsylvania. Finally, even if Pennsylvania law requires foreign businesses to make a difficult decision, so what? Individuals regularly face difficult decisions about waiving important rights, such as the rights counsel, trial, appeal, and silence in the face of government questioning. Moreover, businesses regularly extract waivers from individuals, whether demanding that individuals agree to certain terms merely by clicking on a link or making a purchase. Individuals can even forfeit the right to sue in court by simply accepting employment. This Court discerns no problem with Pennsylvania extracting a concession from a business that voluntarily and knowingly does business in the Commonwealth. A corporation can thus be asked to surrender its right to evade appearing in courts in which it has knowingly elected to do business as price of doing business in the Commonwealth.

## IV.     CONCLUSION

British Airways registered to do business in Pennsylvania knowing that doing so subjected it to general personal jurisdiction in Pennsylvania. Because this Court must apply the dictates of the Third Circuit here, British Airways's motion to dismiss for lack of personal jurisdiction is denied. An Order consistent with this Memorandum will be entered separately.